## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BLACK CREEK STATION HOMEOWNER ASSOCIATION, INC., CAMDEN PLACE ASSOCIATION, INC., MEADOW RIDGE HOMEOWNERS ASSOCIATION, INC., KRISTEN B. FRANKLIN, KENNETH L. SILAS, JR., ROBYN SIMMANS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,** | ) ) ) ) ) ) ) ) ) ) ) | ***JURY TRIAL REQUESTED*** ***CLASS ACTION*** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: CV-2:22-132 MHH** |
| **ROULAND MANAGEMENT SERVICES, LLC, a domestic limited liability company; DARRELL ROULAND (individually and as fiduciary of the Plaintiffs); AIMEE STATHAM (individually and as fiduciary of the Plaintiffs); and MUFG UNION BANK, N.A.,** | ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

---

### FIRST AMENDED COMPLAINT

---

Pursuant to Rule 15, Fed. R. Civ. P., the Plaintiffs hereby file their First Amended Complaint.

### JURISDICTION AND VENUE

1.      This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the

proposed class, and at least one Class Member is a citizen of a state different from a Defendant to establish minimal diversity.

2.      The Northern District of Alabama has personal jurisdiction over the Defendants named in this action because one or more of the Defendants and/or their parents or affiliates are in this District and Defendants conduct substantial business in Alabama and this District through its representatives, headquarters, offices, parents, and affiliates.

3.      Venue is proper in this District under 28 U.S.C. §1391(b) because one or more of the Defendants and/or their parents or affiliates are domiciled in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

4.      Black Creek Station Homeowners Association, Inc. (hereinafter "Black Creek") is a homeowners association doing business in Jefferson County, Alabama. It is an Alabama non-profit corporation which is organized to preserve the common elements and other aspects of the development known as "Black Creek Station." Black Creek seeks to represent a class action herein who will be described as the "Class and /or Class Members." Black Creek brings the claims herein in its singular corporate capacity and as the Class Representative on behalf of the proposed class.

5.      Camden Place Association, Inc. (hereinafter "Camden Place") is a homeowners association doing business in Jefferson County, Alabama. It is an Alabama non-profit corporation which is organized to preserve the common elements and other aspects of the development known as "Camden Place." Camden Place seeks to represent a class action herein who will be described as the "Class and /or Class Members." Camden Place brings the claims herein in its singular corporate capacity and as the Class Representative on behalf of the proposed class.

6.      Meadow Ridge Homeowners Association, Inc. (hereinafter "Meadow Ridge") is a

homeowners association doing business in Jefferson County, Alabama. It is an Alabama non-profit corporation which is organized to preserve the common elements and other aspects of the development known as "Meadow Ridge." Meadow Ridge seeks to represent a class action herein who will be described as the "Class and /or Class Members."  Meadow Ridge brings the claims herein in its singular corporate capacity and as the Class Representative on behalf of the proposed class.

7.     Robyn Simmons is a resident of the State of Alabama who is over the age of nineteen.  At all times mentioned herein, Robyn Simmons was a member of Willow Glenn Homeowners' Association, Inc. who paid certain dues and assessments directly to Defendants in an account held at Union Bank which funds were to be used to preserve the common elements and other aspects of the development known as "Willow Glenn."

8.     Kristen B. Franklin is a resident of the State of Alabama who is over the age of nineteen.  At all times mentioned herein, Kristen B. Franklin was a member of Willow Glenn Homeowners' Association, Inc. who paid certain dues and assessments directly to Defendants in an account held at Union Bank which funds were to be used to preserve the common elements and other aspects of the development known as "Willow Glenn."

9.     Kenneth L. Silas, Jr. is a resident of the State of Alabama who is over the age of nineteen.  At all times mentioned herein, Kenneth L. Silas, Jr. was a member of Willow Glenn Homeowners' Association, Inc. who paid certain dues and assessments directly to Defendants in an account held at Union Bank which funds were to be used to preserve the common elements and other aspects of the development known as "Willow Glenn."

10.     Rouland Management Services LLC (hereinafter "RMS") is an Alabama domestic limited liability company located in Pelham, Alabama and doing business in Jefferson County,

Alabama.

11.     MUFG Union Bank, N.A. (hereinafter "Union Bank") is a California entity that does business in Jefferson County, Alabama.

12.     Darrell Rouland (hereinafter "Rouland") is over the age of nineteen (19) years, resides in Jefferson County, AL, and an owner of Rouland Management Services, LLC. Rouland acted herein as an agent/representative/employee of RMS.

13.     Aimee Statham (hereinafter "Statham") is an individual over the age of nineteen (19) years, and resides in Jefferson County, AL. Statham acted herein as an agent/representative/employee of RMS and Rouland.

FACTS

14.     The primary complaints involved with Plaintiffs' asserted claims herein surround the misappropriation and theft of their certain monies by the of Defendants.

15.     The said "unauthorized interbank electronic money transfers" were made entirely through an electronic system which was created, designed, implemented, and maintained by Defendant Union Bank and which was put in place when the accounts which belonged to Plaintiffs were opened.  Defendant RMS entered into certain contracts with Union Bank whereby Union Bank would receive the use and benefit of certain Association funds which belonged to the Plaintiffs named herein and under which contracts Plaintiffs were the third party intended beneficiary of the same.  Defendant Union Bank knew the funds deposited into the various accounts belonged to Plaintiffs and individual members of Plaintiff Associations.  As a matter of fact, Union Bank touts its services as being specific to Homeowners Associations and even directs individual payments from Association Members to be made through a specialized portal which ultimately pools all funds into an aggregate system for easy management by entities such as

Defendants Rouland and RMS. (See Website Excerpts from Union Bank attached hereto as "Composite Exhibit A").

16.    One of the special features Union Bank offers to customers, at the outset of an account being opened, is "fraud prevention."  Union Bank represents that it "Protect[s] against fraud with technologies designed to enhance control over access to. . .online account information and payment transaction services."  (See "Composite Exhibit A").  In this instance, it is that very set of technology which allowed Defendant Statham to steal Plaintiff funds and commit the acts complained of herein.  It would not be excessive hyperbole to state that what Union Bank gave Defendant Statham was no different than giving a would-be bank thief keys to the bank vault itself since had Union Bank not designed its electronic system the way it did then Defendant Statham would not have been able to steal Plaintiff funds.

17.    Black Creek, Camden Place and Meadow Ridge entered into a homeowner association Management Agreement with RMS for the purpose of managing and maintaining the funds, common areas and payment of common expenses for the benefit of the Members of the Association and the Associations. Members of the Associations paid Annual Assessments and other dues to RMS and Union Bank.  All Association Accounts managed by RMS were held at Union Bank and Union Bank received the benefits of Plaintiff funds and monies and compensated Plaintiffs in the form of interest payments for its use and benefit of the same.

18.    Union Bank owed a fiduciary duty to Plaintiffs and the Class Members due to special circumstances which existed when the accounts were opened because Union Bank designed, maintained, and implemented an electronic system which pooled Plaintiffs' funds and accounts in a central system which allowed Defendants RMS and Statham to steal the same.  In other words, but for the electronic system which was designed, maintained, and implemented by

Union Bank, Defendants RMS and Statham would have had neither opportunity nor the means to steal Plaintiffs' funds held by Union Bank and were in the sole care, custody, and control of Union Bank. Union Bank marketed its services specifically to HOAs and touted special benefits in connection with its services insofar as it specialized in managing HOA funds and it knew those funds would be pooled and centralized in its proprietary system when the accounts were opened as demonstrated in "Composite Exhibit A".

19.     When Union Bank setup the accounts through RMS for Plaintiffs, Union Bank did not disclose to Plaintiffs, as owners of the funds and third party beneficiaries of the accounts, that their monies could or would be pooled in an electronic system which allowed inter-bank transfers, did not disclose to Plaintiffs that RMS had the ability to transfer funds between Plaintiff accounts and did not obtain written authorization from any Plaintiffs permitting the same even though Union Bank itself received direct deposits from Plaintiffs through the online portal shown in "Composite Exhibit A".

20.     Union Bank profited from the benefit and use of the monies it held which belonged to and were owned by Plaintiffs and the Class Members. Union Bank had information not otherwise available to the Plaintiffs and Class members—namely information related to suspicious transactions between and among accounts belonging to Plaintiffs and the Class Members which suspicious activity was perpetrated by Defendants. The information was only available to Union Bank because it designed, maintained, and implemented the electronic system which was in place which served as the artifice through which Defendants Statham and RMS were able to steal Plaintiff funds. Since "fraud prevention" was one of the priority services Union Bank represented it offered, it had a higher standard which it should have followed. In other words, it should have monitored and taken action to prevent the actions on the part of Defendant Statham. Instead, it

purposefully continued to maintain an electronic system which only served to allow Defendant Statham to carry out a years-long fraud on a large portion of the public.

21.     Union Bank breached its fiduciary duty in failing to inform Plaintiffs and the Class Members of suspected or actual suspicious and wrongful activity.  Defendant Union Bank was the only Defendant which was in a position to identify and stop such suspicious activity because it created, implemented, and maintained the electronic system which was used by Defendants RMS and Statham to steal Plaintiff funds.   Union Bank further breached its fiduciary duty to Plaintiffs and the Class Members in failing to suspend such transactions and in not failing to conduct a proper investigation or in not allowing Plaintiffs and the Class Members to conduct a proper investigation on their own. Due to such breach, Plaintiffs and the Class members have been severely damaged in that the monies held are now gone, wasted, and misappropriated due to unauthorized activity and unauthorized charges.  Defendant Union Bank also failed to obtain Plaintiffs' express written approval which allowed their funds to be transferred to other Association accounts or transferred for non-business purposes.  Neither did Union Bank disclose that such funds were capable of being used in such a way through the proprietary electronic system it established.

22.     The monies at issue, which were paid by Plaintiffs and Class Members directly to Union Bank through its web portal as stated above, would not have been lost had Defendant Union Bank maintained proper policies and procedures and not breached its fiduciary duties.  Likewise, such monies would not have been lost had it not been for the electronic system which was designed, maintained, and implemented by Union Bank.  Union Bank's electronic system was in place when the accounts were opened and, as a matter of fact, is one of the special features HOAs gain when they bank with Union Bank.

23.     The duties of Defendant RMS are outlined in the Management Agreements. In

simplest terms, RMS was paid to manage accounts containing the homeowner association dues for each of the Plaintiffs. Lot owners paid certain assessments to RMS which were, in turn, held in certain bank accounts at Union Bank, as stated above. Those monies were held and were to be used only for upkeep and maintenance of common areas, payment of common expenses, and otherwise for the upkeep of the Plaintiffs' development.

24.     Accounts were opened by RMS, and its representatives, at Union Bank and consisted of funds paid directly to Union Bank by Plaintiffs and which funds were owned by Plaintiffs.   A customer relationship existed between Plaintiffs and Union Bank because Union Bank received the benefit of Plaintiffs funds and acknowledged the same by making interest payments to Plaintiffs.   Moreover, Union Bank held itself out to the public (at the outset) as being an HOA-specific financial institution which possessed special expertise and fraud prevention technology.

25.     Defendant Statham was the individual at RMS who had signatory power over these accounts. Upon information and belief, her authority was granted to her by Rouland as owner of RMS, and RMS as a corporate entity. Her business activities pertinent herein were approved and overseen by Rouland and RMS.   Her activities involving the funds at issue were to be monitored and managed by Defendants.

26.     Plaintiffs and Class Members were never allowed to nor granted access to obtain copies of statements for the accounts where their money was deposited with Union Bank even though Plaintiffs were a third party intended beneficiary and owners of the funds of the account agreements between RMS and Union Bank.

27.     Certain funds belonging to the Plaintiffs and Class Members have been improperly misappropriated from the accounts managed by the Defendants. Union Bank allowed such to occur

notwithstanding that such misappropriation should have been prohibited had the banks followed proper policies and procedures. Likewise, as stated above, Union Bank actually created the artifice (i.e. the electronic pooling system) which Defendant Statham used to steal Plaintiff funds. Union Bank owed a duty to ensure that its electronic system could not be used for such purposes and/or it also owed a duty to make sure it had policies and procedures in place which prevented the same.

28.     By March 2021, and upon information and belief earlier, RMS and Union Bank were put on notice of discrepancies in accounts managed by Defendants Rouland and Statham, on behalf of RMS.

29.     During the first half of 2021, Plaintiffs discovered for the first time that their bank account balances were significantly short and large sums of money were unaccounted for.

30.     Plaintiffs subsequently filed  police reports and various law enforcement agencies began an investigation. To date, Plaintiffs have not recovered the monies and does not even have funds to adequately operate the Associations.

31.     RMS, Rouland, and Statham were sued by another homeowner association in April 2021, again putting them on notice of allegations that Defendant Statham and/or other employees of RMS and Rouland were improperly misappropriating money from accounts they were managing.

32.     The Plaintiffs and the Class Members had no knowledge of the misappropriation of funds by the Defendants. This is due to the fact the Plaintiffs and the Class were not receiving statements directly from Union Bank but were instead being provided inaccurate spreadsheet/statements by the Defendants hiding the misappropriation of Plaintiffs' and Class Members funds.

33.     Union Bank, RMS, Rouland, and Statham have been paid fees by each of the

Plaintiffs and Class Members over the course of the contract between Plaintiffs, Class Members and RMS.

34.    The Defendants have also improperly mishandled funds from the accounts held on behalf of the Plaintiffs and Class Members.

35.    The Plaintiffs and Class Members have been deprived of the use of their paid funds which monies were expressly and implicitly paid by them for the upkeep of common areas, payment of common expenses, and general upkeep of the various developments.

## CLASS ACTION ALLEGATIONS

36.    Plaintiffs bring this action against Defendants pursuant to Rule 23(b)(1), (2) and (3) on behalf of themselves and all other entities similarly situated. Plaintiffs seek to represent the following Proposed Classes:

> a. All current and former Homeowner Associations in the United States of America of each of the Defendants who have had HOA funds misappropriated.

> b. All current and former individual members of said Homeowner Associations in the United States of America of each of the Defendants who directly deposited their HOA funds with Union Bank and have had their HOA funds misappropriated.

37.    Excluded from the Classes are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, counsel for the Plaintiffs in this matter, and the Court personnel in this matter.

38.    Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

39.    Defendants subjected Plaintiffs and the respective Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

Numerosity:

40.     Upon information and belief, the proposed Classes are so numerous that joinder of all members would be impracticable. The precise number of Class Member numbers is unknown at this time, but the numbers are more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

Commonality:

41.     Common questions of law and fact predominate in this matter because Defendants' conduct towards the Class Members is identical. Defendants uniformly and systematically, through its centralized systems and actions committed the wrongful conduct alleged herein.

42.     Plaintiffs share a common interest with all Class Members in the objectives of the action and the relief sought.

43.     Because Defendants' conduct was uniform as to all Class Members, the material elements of Plaintiffs' claims and those of Class Members are subject to common proof, and the outcome of Plaintiffs' actions will be dispositive for the Class.

44.     Questions of law and fact that are common to the Classes include, but are not limited to, the following:

(a)     Whether Defendants' practice in misappropriating dues/fees/assessments violates applicable law;

(b)     Whether the bank Defendants failed in monitoring account activities in violation of standard and security banking best practices;

(c)     Whether Plaintiffs and the Classes are entitled to injunctive relief to prevent Defendants from continuing its practice;

(d)     Whether the named Plaintiffs and the Classes are entitled to recover damages for Defendants' practices described herein;

(e)     Whether Defendants unjustly retained and/or misappropriated dues/fees/assessments belonging to Plaintiffs and the Classes.

Typicality:

45.     Plaintiffs are members of the Classes they seek to represent. Plaintiffs' claims are typical of the respective Class Members' claims because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct. Each Class Member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs have as a result of Defendants' conduct.

Adequacy of Representation:

46.     Plaintiffs are adequate representatives of the Classes they seek to represent and will fairly and adequately protect the interests of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them. There is no hostility between Plaintiffs and the unnamed Class Members.

47.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are experienced in class action litigation and have the financial and legal resources to meet the costs and legal issues associated with this type of litigation.

Requirements of Fed. R. Civ. P. 23(b)(3):

48.     The questions of law or fact common to Plaintiffs and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the Classes. All claims by Plaintiffs and the unnamed Class Members are based on the unlawfully misappropriated dues/fees/assessments to Plaintiffs and the Class Members.

49.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there will be some individualized damage determinations.

50.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

<u>Superiority</u>:

51.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (f)  Individual adjudication of all Class Member claims would create extreme hardship and inconvenience for the affected Class Members;
>
> (g)  Individual claims by Class Members are impractical because the costs to pursue individual claims may exceed the value of what any one Class Member has at stake. As a result, individual Class Members may have no interest in prosecuting and controlling separate actions;
>
> (h)  There are no known individual Class Members who are interested in individually controlling the prosecution of separate actions against this particular group of Defendants;
>
> (i)  The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;
>
> (j)  Individual suits would not be cost effective or economically maintainable as individual actions, and;
>
> (k)  The action is manageable as a class action.

52.    The Classes are not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendants keep records of the issues here and the prospective Class Members during the class period. Plaintiffs will be able to ascertain through Defendants' records and well-implemented claims processes, all Class Members. Therefore, both the membership of the Classes and the amount of individual damages will be readily ascertainable.

Requirements of Fed. R. Civ. P. 23(b)(1) & (2):

53.    There is an inherit risk that the prosecution of separate actions by individual members of the Classes may lead to inconsistent outcomes that would confront Defendants with potentially incompatible standards of conduct. Either Defendants' alleged practices are wrong for every one of the Class Members or it is right for every one of the Class Members, making this action appropriate for class certification.

54.    Because Defendants have acted consistently towards all members of the Classes, final equitable and injunctive relief is appropriate with respect to both the Classes and Plaintiffs' claims and is likewise subject to common proof and adjudication.

55.    Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

## COUNT I – BREACH OF CONTRACT AS TO RMS, ROULAND AND STATHAM

56.    Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

57.    The facts discussed previously amount to a breach of the contract between Defendants RMS, Rouland, Statham and the Plaintiffs insofar as the management agreements between the parties are concerned.

58.     With respect to Defendant Union Bank, a contract existed between RMS and Union Bank under which Plaintiffs were the third party intended beneficiary.  Plaintiffs paid the management fees to Defendants RMS, Rouland, and Statham and Defendants deposited certain Association funds directly into the bank accounts at Union Bank.

59.     Defendants RMS, Rouland, and Statham breached their management agreement with Plaintiffs in failing to properly manage Association funds.  Defendant Union Bank breached its agreement with Plaintiffs in failing to protect the funds and prevent theft of the same through its wrongful implementation, design and use of the electronic system used by Statham to steal monies.

60.     As a result of this breach of contract, Defendants are due to reimburse the Plaintiffs the money misappropriated from their accounts and the management fees paid over the course of the agreement at issue.  Defendant Union Bank is due to reimburse Plaintiffs for the funds which it failed to protect and prevent the theft of.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

<u>**COUNT II – BREACH OF FIDUCIARY DUTY AS AGAINST
RMS, ROULAND, AND STATHAM**</u>

61.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

62.     As individuals with control over monies belonging to the Plaintiffs, RMS, Rouland, and Statham owed a fiduciary duty to the Plaintiffs.

63.     The Defendants breached those fiduciary duties by failing to properly monitor the

accounts containing the Plaintiffs' money.

64.     This breach of fiduciary duty allowed Defendants RMS, Statham, and/or other employees, to improperly/negligently misappropriate tens of thousands of dollars from each of the Plaintiffs' accounts.

65.     Defendant Statham wrote checks and/or originated transfers or wire transfers improperly misappropriating money from each of the Plaintiffs' accounts for her own personal use.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory and punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## COUNT III – BREACH OF FIDUCIARY DUTY AS AGAINST UNION BANK

66.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint.

67.     Special Circumstances existed between Plaintiffs, the Class Members, and Defendant Union Bank which gave rise to a fiduciary duty on the part of Union Bank.  The Plaintiffs were the owners of funds paid directly to Union Bank and Union Bank knew of the special circumstances as discussed in the facts above when the accounts were opened.

68.     Defendant Union Bank breached its fiduciary duties to Plaintiffs and the Class Members in each of the following circumstances:

a) In allowing the other Defendants to unilaterally complete unauthorized transactions and transfers without proper approval and consent of the Plaintiffs and Class Members;

b) In failing to notify Plaintiffs and the Class Members of actual or suspected unauthorized or activity notwithstanding that special circumstances existed insofar as Defendant Union Bank was

the only entity to possess such information and, therefore, was the only one in a position to disclose the same;

c) In improperly allowing its agents, representatives, and computer systems to fulfill unauthorized transfers between and among accounts;

d) In allowing the other Defendants to unilaterally complete each of the unauthorized transfers and transactions without any authorization or direction from Plaintiffs or the Class Members;

e) In using Plaintiff funds for its own benefit and failing to protect the same when it knew the funds were owned by Plaintiffs who were the third party intended beneficiary of its account agreements; and

f) Otherwise failing to properly care for monies which belonged to Plaintiffs and the Class Members which were in its sole care, custody, and control.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages as well as special and punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## COUNT IV – THEFT

69.      Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

70.      The conduct of all Defendants amounts to theft. The Defendants are due to refund all of the money misappropriated from each of the Plaintiffs in this case. Each of the Defendants further aided and abetted the other for all unlawful acts complained of herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages as well as special and

punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

<u>**COUNT V – MONEY HAD AND RECEIVED**</u>

71.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

72.     Each of the Defendants have misappropriated and/or made improper use of identifiable funds belonging to each of the Plaintiffs. These funds are due to be refunded to the Plaintiffs.

73.     Defendant Union Bank had the benefit of the funds owned by Plaintiffs and acknowledged the same by paying intertest to Plaintiffs.  Notwithstanding such, Defendant Union Bank has failed to refund such monies to Plaintiffs.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages as well as special and punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

<u>**COUNT VI – THEFT BY DECEPTION**</u>

74.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

75.     The actions of the Defendants in this case constitutes to theft by deception.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages as well as special and punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## COUNT VII – FRAUD

76.    Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

77.    Each of the Defendants committed fraud, either by suppression, misrepresentation, or deceit by withholding relevant information or providing the Plaintiffs with misleading statements hiding and/or misrepresenting the material fact money was being misappropriated from their accounts by one or more of the Defendants.

78.    With respect to Defendant Union Bank, Defendant Union Bank represented to Plaintiffs via its online web portal that it had certain "online security" in place which protected against fraud with technologies designed to enhance control over online account information and payment transactions.

79.    Such representation was made on a continuing basis up and until sometime in October 2021.  It was made to each individual who logged into the online system to make a payment and was intended to induce Plaintiffs to make direct deposits to Union Bank so that Union Bank could receive the benefit of the use of those funds.

80.    The Plaintiffs relied on the lack of relevant information and/or the misstatements to their detriment by continuing to pay the Defendants to manage their bank accounts and by continuing to deposit money in those accounts.  That money was then stolen and misappropriated through no fault of the Plaintiffs.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages as well as special and punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## COUNT VIII – NEGLIGENCE AS TO RMS AND ROULAND

81.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

82.     RMS and Rouland had a duty to train, supervise, and monitor their employees to assure wrongdoing was not committed against the Plaintiffs and Class Members.

83.     Said Defendants breached said duty.

84.     The failure to train, supervise, and monitor Defendant Statham and/or other employees of RMS and the failure to inform the Plaintiffs and Class Members of these issues has harmed Plaintiffs and Class Members and constitute negligence.

85.     The failure to properly oversee the funds and maintain policies and procedures which would have prevented the types of injuries complained of herein has harmed Plaintiffs and Class Members and constitute negligence.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## COUNT VIII – NEGLIGENCE AS TO UNION BANK

86.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

87.     Special Circumstances existed when the accounts belonging to Plaintiffs were opened by Union Bank due to the facts set forth above.  Union Bank owed a duty to Plaintiffs in each of the following instances:

      a)  To design, implement and maintain an electronic system which could not be

used as an artifice of fraud;

b) To implement fail-safes and alerts when funds were transferred between accounts in the electronic system;

c) To expressly disclose to Plaintiffs, as owners of the funds paid directly to Union Bank, that such funds could be transferred by Defendants RMS, Rouland or Statham to other accounts within the electronic system;

d) To obtain prior written approval and authorization from Plaintiffs which permits funds to be transferred "in house" to other Association accounts when there is no obligation owed by Plaintiffs to the owner of those accounts for services rendered or goods provided;

e) To protect the funds used by it in exchange for interest payments made by it to Plaintiffs;

f) To prevent the theft of funds owned by Plaintiffs when it received the benefit and use of those funds;

g) To notify Plaintiffs, when the accounts were created, that monies owned by Plaintiffs could be transferred "in-house" without notice or consent of Plaintiffs;

h) To properly oversee the funds and to properly maintain policies and procedures which would have prevented the types of injuries complained of herein due to special circumstances which existed at the time the accounts were opened;

i) To design and implement an electronic system which actually served to "Protect against fraud with technologies designed to enhance control over access to online account information and payment transaction services.";

j)   To fully disclose the parameters and capabilities of the electronic system to owners of funds deposited to Union Bank when those funds are capable of being exploited through the use of the electronic system, and;

k)   To follow applicable State, Federal and Banking regulations in handling and accounting for monies owned by Plaintiffs.

88.   Union bank breached each of the foregoing duties and the same constitutes negligence which thereby caused damage to Plaintiffs through the loss of funds and monies owned by them.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## COUNT IX – VICARIOUS LIABILITY

89.   Plaintiffs adopt and re-allege all prior paragraphs of this Complaint, as if set forth fully herein.

90.   Defendant Rouland and RMS are vicariously liable for the actions of its employees, who are the individuals that wrongfully or improperly appropriated money from the Plaintiffs' and Class Member accounts.

91.   Defendant Union Bank is vicariously liable for the actions of its employees, agents, and representatives who wrongfully or improperly appropriated money from the Plaintiffs' and Class Member accounts.  Moreover, Defendant Union Bank is vicariously liable for the actions of RMS, Rouland, and Statham as it created, designed, and implemented the online system which served as the very artifice through which the theft complained herein occurred.

Had it not been for the mechanism put in place by Union Bank the injuries complained of herein would not have occurred and likely could not have occurred.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand judgment against the named Defendant(s), jointly and severally, for compensatory damages as well as special and punitive damages in an amount to be determined by a struck jury, together with pre-judgment interest from the date of the incident(s) plus the cost of this action.

## JURY DEMAND

**PLAINTIFFS HEREBY DEMAND A STRUCK JURY FOR THE TRIAL IN THIS CAUSE.**

> */s/Jay Aughtman*
> Joseph "Jay" H. Aughtman (AUG001)
> *Attorney for the Plaintiff and Class*

OF COUNSEL:
**Aughtman Law Firm, LLC**
1772 Platt Place
Montgomery, AL 36117
T: (334) 215-9873
F: (334) 213-5663
jay@aughtmanlaw.com

> *s/ Nicholas Cole Hughes*
> Nicholas Cole Hughes (HUG057)
> Matthew Bruce Alfreds (ALF011)
> *Attorneys for the Plaintiff and Class*

**Argo | Hughes, LLC**
475 Providence Main Street, Suite 303D
Huntsville, AL 35806
Tel:    334-279-0088
Fax:    334-279-8830
nick@argohughes.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which sends notification of such filing to counsel of record.

*/s/Jay Aughtman*
Of Counsel



**UnionBank**®
A member of MUFG, a global financial group

**Homeowners Association Services**

Customer Service: 888-705-0600

Products & Services | Latest News | About Us | Contact Us



Homeowners Association Services

With over 25 years of experience in the community association industry, our team delivers the solutions and the support to meet your unique needs. Watch how we can help you streamline your financial operations.

View Video ▶

**Enter your User ID for Online Banking and Support Center only: (Not for HOA Online Payments)**

User ID

Sign On ▶

User ID or Password Help

Security Information

**Online Payments for Homeowners**

Make Payment ▶

**Customer Service**
888-705-0600

Monday-Friday
8 a.m. – 8 p.m. ET
5 a.m. – 5 p.m. PT
Excluding Federal Holidays

ABOUT US     PRODUCTS & SERVICES     PRIVACY AND SECURITY     CALIFORNIA: PRIVACY     ACCESSIBILITY POLICY     LATEST NEWS     SITEMAP

© 2021 MUFG Union Bank, N.A. All rights reserved. Member FDIC. Union Bank is a registered trademark and brand name of MUFG Union Bank, N.A. Smartstreet is a registered mark of MUFG Union Bank, N.A.



**UnionBank®**
A member of MUFG, a global financial group

**Homeowners Association Services**

Customer Service: 888-705-0600

**Products & Services**

**Latest News   About Us   Contact Us**

Enter your User ID for Online Banking and Support Center only: (Not for HOA Online Payments) 🔒

User ID _____   **Sign On ▶**
User ID or Password Help

Security Information

**Online Payments for Homeowners**

**Make Payment ▶**

**Customer Service**
888-705-0600

Monday-Friday
8 a.m. – 8 p.m. ET
5 a.m. – 5 p.m. PT
Excluding Federal Holidays

**Products & Services**
Account Management
Deposit Services
Payment Processing
CDPlus (Offered through UnionBanc Investment Services)
Integrated Services

## Fraud prevention

Protect your organization against fraud with tools and services geared toward early detection and prevention.

- **Positive Pay:** Safeguard funds and help prevent fraud with early detection of altered or unauthorized checks. View Demo

- **ACH Debit Blocks:** Help protect your business from unauthorized ACH entries by automatically blocking those ACH debits and/or credits from posting to an account.

- **Electronic Payment Authorization (EPA):** Mitigate the risks of vendors debiting your account. With EPA you can establish maximum dollar amounts or number of debits.

- **Online Security:** Protect against fraud with technologies designed to enhance control over access to your online account information and payment transaction services. View Demo

To learn more about our prevention tools and resources, click here.