UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BLACK CREEK STATION HOMEOWNER ASSOCIATION, INC., CAMDEN PLACE ASSOCIATION, INC., MEADOW RIDGE HOMEOSWNERS ASSOCIATION, INC., KRISTEN B. FRANKLIN, KENNETH L. SILAS, JR., ROBYN SIMMANS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> MUFG UNION BANK, N.A., <br><br> Defendant. | Case No.: 2:22-cv-132-MHH |

## MEMORANDUM OPINION

According to the National Association of Realtors, an HOA or Homeowners Association is a non-profit neighborhood organization, often in a developed community, that manages dues collected from homeowners and uses those dues to maintain community areas within the neighborhood. https://www.nar.realtor/home-owners-associations-hoas (last visited April 20, 2023). Three HOAs – Black Creek

1

Station Homeowner Association, Camden Place Association, Inc., and Meadow Ridge Homeowners Association, Inc. – and three members of the Willow Glenn Homeowners' Association filed this action against Rouland Management Services – RMS; two RMS employees – Darrell Rouland and Aimee Statham; and MUFG Union Bank. The HOAs have asserted several state law claims against the defendants to recover HOA dues which the defendants allegedly misappropriated. (Doc. 34, pp. 2–4).

In their amended complaint, the HOAs assert state law claims against Union Bank for breach of contract, breach of fiduciary duty, negligence, theft, fraud, and money had and received. (Doc. 34). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Union Bank has asked the Court to dismiss the HOAs' amended complaint for failure to state a claim. (Doc. 38-1). The HOAs have agreed to voluntarily dismiss their claims against Union Bank for money had and received, theft, and fraud. (Doc. 57, p. 20). Therefore, in this opinion, the Court addresses the HOAs claims against Union Bank for breach of contract, breach of fiduciary duty, and negligence.

In the opinion, the Court first identifies the standard that governs the Court's review of Union Bank's motion. Then, consistent with that standard, the Court sets forth the HOAs' factual allegations, depicting them in the light most favorable to the

HOAs. Finally, the Court evaluates the HOAs' remaining claims against Union Bank under the legal principles that govern those claims.

## I.

Rule 12(b)(6) allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the claimant is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 94 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the factual allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (citing *Hawthorne v. Mac*

*Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Accordingly, in this opinion, the Court views the factual allegations in the amended complaint in the light most favorable to the HOAs.

## II.

The HOAs signed a management agreement with RMS. Pursuant to the agreement, RMS was to manage the collection of homeowners' annual dues and assessments and use those funds to maintain the communities' common areas. (Doc. 34, pp. 5, 8, ¶¶ 17, 23). RMS opened accounts at Union Bank, and HOA members deposited their annual dues and assessments directly into the accounts. (Doc. 34, pp. 4, 7, 8, ¶¶ 15, 22, 24).

Union Bank offered fraud prevention with the accounts that RMS opened at the bank. (Doc. 34, p. 5, ¶ 16). On its website, Union Bank states that it will "[p]rotect your organization against fraud with tools and services geared toward early detection and prevention." (Doc. 34, p. 26). Union Bank asserts: "With over 25 years of experience in the community association industry, our team delivers the solutions and the support to meet your unique needs." (Doc. 34, p. 25).

Union Bank directed HOA members to pay their dues through a specialized portal. (Doc. 34, p. 4, ¶ 15). As HOA members deposited dues through the portal,

4

the money was pooled, allowing RMS to transfer funds among the HOAs' accounts. (Doc. 34, pp. 4, 6, ¶¶ 15, 19). Union Bank did not tell the HOAs about the pooling system, and the HOAs did not authorize the system's use. (Doc. 34, p. 6, ¶ 19). The HOAs did not receive account statements or updates about the accounts RMS opened. (Doc. 34, p. 8, ¶ 26).

Early in 2021, the homeowners associations discovered that their account balances were significantly short and that large sums of money were unaccounted for. (Doc. 34, p. 9, ¶ 29). By March 2021, RMS and Union Bank were notified of discrepancies in the accounts Mr. Rouland and Ms. Statham managed. (Doc. 34, p. 9, ¶ 28). The HOAs filed police reports and participated in law enforcement investigations regarding the matter. The HOAs were not able to recover the accounts' shortages. (Doc. 34, p. 9, ¶ 30).

## III.

### *Breach of Contract*

For their breach of contract claim against Union Bank, the HOAs do not contend that they had express contracts with Union Bank. Instead, they contend that they are third-party beneficiaries of the account agreements between RMS and Union Bank. (Doc. 34, p. 15, ¶ 58).

Under Alabama law, "[a] party claiming to be a third-party beneficiary 'must establish that the contracting parties intended, upon execution of the contract, to

bestow a *direct,* as opposed to an *incidental,* benefit upon the third party.'" *Cincinnati Ins. Co. v. Barber Insulation, Inc.,* 946 So. 2d 441, 443 (Ala. 2006) (quoting *Ex parte Stamey*, 776 So. 2d 85, 92 (Ala. 2000)) (emphasis in *Cincinnati Ins. Co.*). A litigant may assert a claim for breach of contract as a third-party beneficiary if the litigant can demonstrate that the contracting parties intended to bestow a direct benefit upon it, that the litigant was the intended beneficiary of the contract, and that the contract was breached. *Aliant Bank v. Four Star Investments, Inc.*, 244 So. 3d 896, 934 (Ala. 2017) (quoting *Swann v. Hunter*, 630 So. 2d 374, 376 (Ala. 1993)). To determine whether a litigant is an intended third-party beneficiary of a contract, a court examines the terms of the agreement at issue. *Cincinnati Ins. Co.,* 946 So. 2d at 445; *H.R.H. Metals, Inc. v. Miller ex rel. Miller*, 833 So. 2d 18, 24 (Ala. 2002).

At this early stage of the litigation, the HOAs need only plausibly allege that an express contract between Union Bank and RMS existed and that the HOAs were the intended beneficiaries of that contract. *See Ashcroft*, 556 U.S. at 678; *Aliant Bank v. Four Star Inv., Inc.*, 244 So. 3d 896, 934 (Ala. 2017) (quoting *Swann v. Hunter*, 630 So. 2d 374, 376 (Ala. 1993)). The HOAs sufficiently allege that they had an agreement with RMS to manage their communities using HOA dues, that RMS opened several accounts at Union Bank to collect the dues, that Union Bank knew that the funds deposited into the RMS accounts were from HOA members and

6

for the benefit of the HOAs and their members, and that Union Bank breached its obligation to monitor its electronic deposit system and to prevent misconduct in the handling of pooled funds.  (Doc. 34, pp. 5-6, 8-9, 15, ¶¶ 17, 20, 27, 59-60); Doc. 34, pp. 25-26) (Union Bank's "Homeowners Association Services" webpages discussing tools and services Union Bank offers to protect HOAs and "[s]afeguard funds" through "early detection and prevention" of fraud).[1]  Thus, the HOAs have plausibly pleaded a breach of contract claim under a third-party beneficiary theory.

Alternatively, the HOAs argue that they have sufficiently pleaded a breach of contract claim against Union Bank based on an implied contract theory.  "Implied contracts normally arise in situations where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement."  *Ellis v. City of Birmingham*, 576 So. 2d 156, 157 (Ala. 1991); *see also Ex parte Jackson Cnty. Bd. of Edu.*, 4 So. 3d 1099, 1104 (Ala. 2008).  An implied contract has the same elements as an express contract:  an offer, acceptance, consideration, and mutual assent to the contract's terms.  *Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013).

The HOAs do not allege that they bargained with Union Bank for the accounts that RMS opened there.  The HOAs plead only that HOA members deposited dues and other assessments directly into accounts at Union Bank through a secure portal

---

[1] Under Alabama law, a bank account is "a contract of deposit between a depositor and a financial institution."  Ala. Code § 5-24-1 (1975).

that Union Bank created. In contrast to the *Stacey* plaintiffs who established through circumstantial evidence that they had negotiated a loan agreement with the defendant, 142 So. 3d at 531-32, the HOAs do not allege a direct relationship between themselves and Union Bank other than the members' deposit activity. *See Ex parte Jackson Cnty. Bd. of Edu.*, 4 So. 3d at 1104 (affirming summary judgment for a school board on claim for breach of implied contract relating to ticket sales for football game where "the Board presented substantial evidence indicating that it was not a party to any contract with Kaitlyn, that it made no offer, and that it received no consideration" because for playoff games like the one at issue, the state athletic association rather than the local school board organized and held games, sold tickets for the games, and collected ticket proceeds).

Thus, though the HOAs have adequately pleaded that they were intended third-party beneficiaries of the account agreements between RMS and Union Bank and that Union Bank breached those agreements, the HOAs have not properly pleaded that they reached an agreement directly with Union Bank. The HOAs simply state, in a conclusory fashion, that they had an agreement with the bank which the bank breached. (Doc. 34, p. 15, ¶ 59). These threadbare allegations are not sufficient to support a claim for breach of an implied contract. Therefore, to the extent that the HOAs' breach of contract claim rests on an implied contract theory, the Court dismisses the claim without prejudice.

8

*Breach of Fiduciary Duty*

The HOAs contend that Union Bank owed them a fiduciary duty because of the special circumstances created by the payment portal. (Doc. 34, pp. 5-6, 16, ¶¶ 18, 67). The HOAs allege that Union Bank breached its fiduciary duty to them because the bank did not inform the HOAs that RMS would be able to transfer funds among accounts, did not obtain the HOAs' consent for such transfers, and did not notify the HOAs of suspicious activity in the accounts. (Doc. 34, pp. 6-7, 16-17, ¶¶ 19-22, 67-68). *Aliant Bank*, 244 So. 3d at 907 ("The elements of a breach-of-fiduciary-duty claim are the existence of a fiduciary duty, a breach of that duty, and damages suffered as a result of that breach.").

A fiduciary relationship "applies to all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise." *Line v. Ventura*, 38 So. 3d 1, 12 (Ala. 2009) (citations omitted). A fiduciary relationship arises when "confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another." *Ventura*, 38 So. 3d at 13 (quoting *Bank of Red Bay v. King*, 482 So. 2d 274, 284 (Ala. 1985)) (quotation marks omitted).

> Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank. *See Power Equipment Co. v. First Alabama Bank,* 585 So.2d 1291 (Ala.1991); *Faith, Hope & Love, Inc. v. First Alabama Bank of Talladega County, N.A.,* 496 So.2d 708 (Ala.1986). However, a fiduciary duty may arise when the customer reposes trust

9

> in the bank and relies on the bank for financial advice, or in other special circumstances. *Bank of Red Bay v. King,* 482 So.2d 274 (Ala.1985); *Baylor v. Jordan,* 445 So.2d 254 (Ala.1984).

*K & C Dev. Corp. v. AmSouth Bank,* 597 So. 2d 671, 675 (Ala. 1992); *see also Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1190-91 (Ala. 2008) (same); *Power Equipment Company, Inc. v. First Alabama Bank*, 585 So. 2d 1291, 1297-98 (Ala. 1991) (same).

The Alabama Supreme Court has held that a fiduciary duty did not exist between a bank and a company that borrowed funds from the bank where a bank officer improperly diverted funds to himself and others and "virtually destroyed [the company's] chances of obtaining further credit." *Power Equipment Company*, 585 So. 2d at 1297. The company did not allege that it relied on the bank for financial advice, 585 So. 2d at 1297, and the Alabama Supreme Court was not persuaded that special circumstances existed between the bank and the company based on the bank employee's misconduct because the company was aware of the misconduct before it signed a note securing a line of credit.

Here, there is no evidence that the HOAs or their members had notice that Union Bank's direct deposit system pooled deposits from different HOAs or that RMS was misappropriating comingled HOA funds. In fact, the HOAs complain that Union Bank should have alerted them to the pooling feature of the special portal that homeowners used to pay their HOA dues and assessments. (Doc. 34, p. 6, ¶ 19).

10

The HOAs contend that Union Bank "designed, maintained, and implemented the electronic system which served as the artifice through which defendants Statham and RMS were able to steal Plaintiff funds." (Doc. 34, p. 6, ¶ 20). The HOAs contend that Union Bank was the only party positioned to detect and stop suspicious activity in the HOA accounts that RMS opened, given Union Bank's failure to disclose the pooling feature to the HOAs and their members, (Doc. 34, p. 7, ¶ 21), and HOA members made payments "directly to Union Bank through its web portal," (Doc. 34, p. 7, ¶ 22), creating a direct relationship between Union Bank and the depositors, (Doc. 34, p. 8, ¶ 24).

Given the HOAs' allegations that describe special circumstances surrounding the HOAs' relationship with Union Bank and Union Bank's unique and superior knowledge of its pooling system which allegedly provided the means for RMS to misappropriate HOA funds, the HOAs have adequately alleged that Union Bank occupied a position out of which the duty of good faith to the HOAs and their members ought in equity and good conscience to arise. Because the HOAs have adequately alleged special circumstances that would give rise to a fiduciary duty and breaches of the duty which injured the HOAs and their members, the Court denies Union Bank's motion to dismiss the HOAs' breach of fiduciary duty claim.

*Negligence*

Under Alabama law, to establish a claim for negligence, a plaintiff must prove: "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008). A non-party to a contract "may recover in negligence for breach of a duty imposed by that contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable." *QORE, Inc. v. Bradford Bldg. Co., Inc.*, 25 So. 3d 1116, 1114 (Ala. 2008). "'Such duty may arise from the foreseeability that such others may be injured by negligent performance, or duty may arise from the knowledge that others are relying upon a proper performance.'" *Cincinnati Ins. Co.*, 946 So. 2d at 448 (quoting *McGaha v. Steadman,* 410 So. 2d 420, 422 (Ala. Civ. App. 1981)).

Here, the HOAs have plausibly alleged, in a manner sufficient to give Union Bank notice of the negligence claim against it, that through an electronic portal that Union Bank created, HOA members directly deposited funds in the bank and that the bank's electronic deposit system, by design, pooled funds from several HOAs, inviting misconduct in the management of the deposited funds. (Doc. 34, pp. 4-5, ¶¶ 15, 16). Under the circumstances alleged, it was foreseeable that depositors using

Union Bank's alleged system would be harmed if the system was abused. The HOAs allege that they were harmed because RMS abused the electronic deposit system that Union Bank created and maintained. At this early stage of the litigation, these allegations suffice to allow the HOAs' negligence claims against Union Bank to survive the bank's Rule 12(b)(6) motion.[2]

## IV.

For the reasons discussed above, the Court grants Union Bank's motion to dismiss to the extent that the HOAs' breach of contract claim rests on an implied contract theory. The Court denies the balance of Union Bank's motion to dismiss.

**DONE** and **ORDERED** this April 26, 2023.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[2] To have a jury decide their negligence claims, the HOAs will have to produce evidence to substantiate their allegations. *TocMail, Inc. v. Microsoft Corp.*, --- F.4th ---, Case No. 22-10223 (11th Cir. April 25, 2023).